UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR. NO. 21-cr-10339-1 |
| V. ) | |
| MIKE OZIEGBE AMIEGBE ) | |

## SENTENCING MEMORANDUM ON BEHALF OF MIKE OZIEGBE AMIEGBE

Through counsel, Mike Oziegbe Amiegbe ("Amiegbe") files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

The defendant notes that the Probation Department has done a complete and thorough job of accurately presenting to this Court his personal history replete with the factual presentation of his life, work history, family, and events that have impacted his life. The defendant further notes that the Probation Department's calculations of the sentencing guidelines are detailed, thorough and presented with clarity.

### BACKGROUND OF THE DEFENDANT

Amiegbe was born on July 11, 1978 in Nigeria. He came to the United States in 2011 with a Visa. He became a permanent resident in 2015, and he is legally residing in the United States. The remainder of the defendant's background, educational skills, employment record and financial condition are fully set forth in the PSR and incorporated herein.

On March 25, 2021, Ameigbe was arrested by state authorities for charges related to the instant offense.

On March 26, 2021 he was released on $10,000 unsecured bond and pretrial conditions

after serving two (2) days in custody.

On or about November 16, 2022, he entered into a plea agreement pursuant to F.R.Cr.P. 11(c)(1)(B).

On February 16, 2022, the defendant appeared before this Honorable Court and pled guilty to a one – count Information, which charged Conspiracy to Commit Mail Fraud in violation of 18 USC 1349 and 18 USC 1341.

## **Sentencing under *Booker***

On January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in Blakely v. Washington, 124 S. Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. United States v. Booker, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. Id. at 751. Accordingly, reaffirming its holding in Apprendi, the Court concluded that

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt. Id. at 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guideline's mandatory nature, 18 U.S.C. § 3742(e), incompatible with its Sixth Amendment holding. Booker, 125 S. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." Id. at 757.

Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by Booker, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a). Booker, 125 S. Ct. at 757. Thus, under Booker, sentencing courts must treat the guidelines as just one of a number

of sentencing factors set forth in 18 U.S.C. § 3553(a).

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)  to afford adequate deterrence to criminal conduct;
(C)  to protect the public from further crimes of the defendant; and
(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1) "the nature and circumstances of the offense and the history and characteristics of the defendant" (§ 3553(a)(1);
2) "the kinds of sentences available" (§ 3553(a)(3);
3) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" (§ 3553(a)(6); and
4) "the need to provide restitution to any victims of the offense." (§ 3553(a)(7).

Other statutory sections also give the district court direction in sentencing. Under 18 U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate means of promoting correction and rehabilitation" (emphasis added).

Under 18 U.S.C. § 3661, "*no limitation* shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence" (emphasis added). This statutory language certainly overrides the (now-advisory) policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. *See* U.S.S.G. § 5H1. See also United States v. Nellum, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57 at sentencing, would upon his release from prison have a very low likelihood of recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing Commission, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines, May 2004); United States v. Naylor, 359 F. Supp. 2d 521 (W.D. Va. 2005) (concluding that sentence below career offender guideline range was reasonable in part because of defendant's youth when he committed his predicate offenses – he was 17 – and noting that in Roper v. Simmons, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant differences in moral responsibility for crime between adults and juveniles).

The directives of Booker and § 3553(a) make clear that courts may no longer uncritically apply the guidelines. Such an approach would be "inconsistent with the holdings of the merits majority in Booker, rejecting mandatory guideline sentences based on judicial fact-finding, and the remedial majority in Booker, directing courts to consider all of the § 3353(a) factors, many of which the guidelines either reject or ignore." United States v. Ranum, 353 F. Supp. 2d 984, 985-86 (E.D. Wisc. Jan. 19, 2005) (Adelman, J.). As another district court judge has correctly observed, any approach which automatically gives "heavy" weight to the guideline range "comes perilously close to the mandatory regime found to be constitutionally infirm in Booker." United States v. Jaber, 362 F. Supp. 2d 365 (D. Mass. 2005). See also United States v. Ameline, 400 F.3d 646, 655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is "only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence"), reh'g en banc granted, 401 F.3d 1007 (9th Cir. 2005).

Justice Scalia explains the point well in his dissent from Booker's remedial holding:

> Thus, logic compels the conclusion that the sentencing judge, after considering the recited factors (including the guidelines), has full

>discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range. If the majority thought otherwise – if it thought the Guidelines not only had to be 'considered' (as the amputated statute requires) but had generally to be followed – its opinion would surely say so. <u>Booker</u>, 125 S. Ct. at 791 (Scalia, J., dissenting in part).

Likewise, if the remedial majority thought the guidelines had to be given "heavy weight," its opinion would have said so. The remedial majority clearly understood that giving any special weight to the guideline range relative to the other Section 3553(a) factors would violate the Sixth Amendment.

In sum, in every case, a sentencing court must now consider <u>all</u> of the § 3553(a) factors, not just the guidelines, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing. And where the guidelines conflict with other sentencing factors set forth in §3553(a), these statutory sentencing factors should generally trump the guidelines. See <u>United States v. Denardi</u>, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since § 3553(a) requires sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violates statute and is reversible, even if within guideline range).

## **APPLICATION OF THE STATUTORY SENTENCING FACTORS TO THE FACTS OF THIS CASE**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

1. **The Nature and Circumstances of the Offense and the History and Characteristics of the Offender:**

The PSR fairly and accurately sets for the specific characteristics of Ameigbe as well as the circumstances of the offense conduct. There is no doubt that Ameigbe is a caring and

supportive father to his young daughter. Additionally, the PSR accurately sets forth his family history, personal and family data, physical condition and lenghty employment record. See, letter of De'Shonna Hamilton (Exhibit 1), Dele Alabi (Exhibit 2) and his fiance, Ayodele Akinwum (Exhibit 3), attached. Ameigbe has been and will continue to be involved and present in his daughter's life. Ameigbe will coparent his daughter and provide the stability and normalcy needed in her young development.

Additionally, Ameigbe will continue to maintain employment as he has always done. All of this will ensure that the activities for which he has pled guilty and taken full responsibility for will, in the future, be viewed as aberrant behavior. Through his plea agreement and his subsequent actions, Ameigbe has accepted responsibility for his role in the offense. He acknowledges his actions in this case not simply to resolve the matter, but as a major step in making amends for his past and becoming a better person for the sake of his family and community. Additionally, Ameigbe believes that the additional information brought to the Court's attention at the time of sentencing will only magnify and enhance the steps he has taken in making amends for his past actions. See, letter of Mike Oziegbe Amiegbe (Exhibit 4), attached.

2. **The Kinds of Sentences Available:**

In Booker, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. Booker, 125 S. Ct. at 756. Since the guidelines are now advisory, the sentencing table and restrictions on probationary sentences, sentences of home confinement and split sentences in U.S.S.G. 5A, 5B1 and 5C1 are also advisory. Likewise, supervised release is no longer mandatory, unless required by statute. The only restrictions on sentencing are those imposed by statue. 18 U.S.C. 3553 (e).

3. **The Sentencing Range Established by the Sentencing Commission**:

**Count 1 – Conspiracy to Commit Mail Fraud -** pursuant to USSG 2X1.1 and 2B1.1(a)(1) the base offense level is 7.

A fourteen (14) level enhancement is warranted pursuant to USSG 2B1.1(b)(1)(H) as the loss was more than $550,000 but not more than $1,500,000. Likewise, an additional two (2)

levels are added pursuant to U.S.S.G. 2B1.1(b)(10)(B) as a substantial part of the fraudulent scheme was committed from outside of the U.S. Finally, the offense level is increased by two (2) as the offense involved the use of an authentication features added to fraudulent foreign passports to make them appear authentic. USSG 2B1.1(b)(11)(A)(ii). This yields an adjusted offense level of 25.

**ACCEPTANCE OF RESPONSIBILITY**

The defendant has overwhelmingly demonstrated acceptance of responsibility. Pursuant to U.S.S.G 3E1.1(a) the offense level is decreased by two (2) levels.

Finally, the offense level is decreased by an additional one (1) level pursuant to U.S.S.G. 3E1.1(b).

Accordingly, we believe that Ameigbe has a combined total offense level of 22 with a Criminal History Category I. This yields a guideline range of 41 - 51 months.

**4. There are good grounds to Depart or vary Downward from the Guideline Level:**

A written plea agreement was reached pursuant to F.R.Cr.P.11(c)(1)(B). Additionally, Ameigbe believes that the sum total of information presented by the defendant, as well as the Government, to the Court at the time of sentencing will support his recommendation of three (3) years of probation with home detention not to exceed six (6) months or, in the alternative, time served, with three (3) years of supervised release with home detention not to exceed six (6) months. This recommendation is, in itself, a downward departure or variance from the Guideline level.

**5. Applying 18 U.S.C. 3553(a), the Court should impose a sentence outside of and substantially lower than the guideline range in order to avoid unwarranted disparity and to avoid a sentence greater than necessary:**

The circumstances of this case, and the unique circumstances of this defendant, strongly militate in favor of varying from the advisory guideline. Indeed, the Court should impose a

sentence considerably lower than that advised by the guideline range. A guideline sentence would punish the defendant far more severely than needed to satisfy the sentencing goals of 18 U.S.C. 3553(a). A sentence outside the guideline range is also indicated by the need to avoid treating the defendant in disparate fashion from other defendants nationally and within this district.

**Disparity.** 18 U.S.C. 3553(a)(6) requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". This is a "key premise" of the statutory scheme. US v. Williams, 891 F.3d 967 (1st Cir. 1989). See also, US v. Gall, 552 US 38 (2007) (court properly considered sentences imposed on other defendants); US v. Jackson, 30 F.3d 199, 201 (1st Cir 1994) (guideline "intended to alleviate disparity in sentencing and to make it reasonably likely that similarly situated offenders will receive comparable punishments, regardless of where they are prosecuted, or which judge presides at sentencing.")

**Necessity**. Most importantly, a downward variance is called for by the "parsimony principle" of 18 USC 3553(a), that is, that "the court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes" set forth in the statute. Clearly no argument can be made that a guideline sentence is "necessary". Nor can it be said that imprisonment is in any way needed to protect the public. Nor is it needed for his rehabilitation. Nor would a guideline sentence be needed to reflect the seriousness of the offense, to promote respect for the law, or to afford adequate deterrence. And it would not constitute "just punishment." This is not a complaint – it is a fact, but one the Court must consider in making its disposition.

There is little need to protect the public from further crimes of Ameigbe since he is unlikely to be a repeat offender. 18 U.S.C. 3553(a)(2)(C).

**Recommendation:**

Ameigbe requests that this Honorable Court impose a sentence that takes into consideration his relevant history, personal and otherwise, along with the information presented by the Government at the time of sentencing and impose a sentence of three (3) years of probation with home detention not to exceed six (6) months or, in the alternative, time served with three (3) years of supervised release with home detention not to exceed six (6) months.

**Other relief requested:**

If applicable, Ameigbe requests that the Court recommend:

a. That if he is to be in the custody of the department of correction, he serves his sentence at an FCI as geographically as close as possible to Boston,

b. That if he is to be in the custody of the department of correction, he be allowed to self report, and

c. That if any fine or restitution is imposed it be commensurate with his ability to pay.

## CONCLUSION

For the reasons set forth above, the Court should impose a sentence of three (3) years of probation with home detention not to exceed six (6) months or, in the alternative, time served with three (3) years of supervised release with home detention not to exceed six (6) months. The imposition of either is below and outside of the applicable guideline range in this case. Ameigbe submits that such a sentence accurately reflects the full and complete case history and, when coupled with the additional information presented by the Government at the time of sentencing, is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,
Mike Oziegbe Amiegbe,
By his attorney,

/s/   Neil F. Faigel
Neil F. Faigel
BBO No. 551688
10 Main Street
Suite L - 2
Andover, MA 01810
(978) 681 – 9600

Dated: August 9, 2023

## CERTIFICAT OF SERVICE

I hereby certify that on August 9, 2023 a true copy of the above document(s) was filed through the ECF system and will be sent electronically to the registered participants as identified

on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

    /s/ Neil F. Faigel